AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Oregon

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )          Case No.
                                                   )
Information associated with Facebook User ID       )          '18 -MC-155 '
100018100927528 as set forth in Attachment A       )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Information associated with the Facebook user ID 100018100927528 that is stored at premises owned, maintained, controlled, or operated by Facebook, as described in Attachment A hereto,

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*
The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 3653 | Supervised Release Violation |

The application is based on these facts:
See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Patrick McGarrah Deputy US Marshal
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     _____03/01/2018_____

_____
*Judge's signature*

City and state:  Portland, Oregon                    John V. Acosta, United States Magistrate Judge
                                                     *Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF PATRICK MCGARRAH

### Affidavit in Support of an Application
### for a Search Warrant for a Facebook Account

I, Patrick McGarrah, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Deputy United States Marshal with the United States Marshals Service and
have been since September, 2004.   My current assignment is as a full-time member of the
Pacific Northwest Violent Offender Taskforce (PNVOTF) responsible for the investigation and
apprehension of fugitives from justice.   My training and experience includes formal training at
the Federal Law Enforcement Training Center (FLETC), and numerous other courses sponsored
by law enforcement training providers since 2005.   I have received informal training from other
law enforcement investigators.   I have gained knowledge through years of fugitive
investigations, and from persons whom I have arrested and the informants that are close to them.
I have interviewed them and learned about the means and methods that wanted individuals use to
attempt to hide their identity, conceal their location from law enforcement, and mask their illegal
activities including the use of electronic communications, computer networks, and electronic
banking.

2.      I submit this affidavit in support of an application for a search warrant under 18
U.S.C. § 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook, a social networking
company headquartered in Menlo Park, California, to provide information associated with a
certain Facebook account 100018100927528 (hereinafter "Facebook Account") that is stored at
premises owned, maintained, controlled, or operated by Facebook.   The Facebook Account is
further described in Attachment A hereto, and the information to be searched for and seized is
described in the following paragraphs and in Attachment B hereto.

3.     This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.   The facts

set forth in this affidavit are based on my own personal knowledge, knowledge obtained from

other individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

herein, and information gained through my training and experience.

### Applicable Law

4.     Title 18 U.S.C. § 3653; Supervised Release Violation.

### Relevant Electronic and Wire Communication Statutes

5.     The relevant federal statutes involved in the disclosure of customer

communication records for the requested data in the Facebook Account are as follows:

a.     Title 18 U.S.C. § 2703(a) provides, in part: "A governmental entity may

require the disclosure by a provider of electronic communication service of the contents of a wire

or electronic communication, that is in electronic storage in an electronic communications

system for one hundred and eighty days or less, only pursuant to a warrant issued using the

procedures described in the Federal Rules of Criminal Procedure by a court of competent

jurisdiction."

b.     Title 18 U.S.C. § 2703(b)(1) provides, in part: "A governmental entity

may require a provider of remote computing service to disclose the contents of any wire or

electronic communication . . . (A) without required notice to the subscriber or customer, if the

governmental entity obtains a warrant issued using the procedures described in the Federal Rules

of Criminal Procedure by a court of competent jurisdiction."

c.    Title 18 U.S.C. § 2703(c)(1) provides, in part: "A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court of competent jurisdiction."

d.    Title 18 U.S.C. § 2510(1) defines a "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce."

e.    Title 18 U.S.C. § 2510(12) defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce," with certain exceptions not applicable here.

f.    Title 18 U.S.C. § 2510(17) defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

g.    This Court has jurisdiction to issue the requested warrant because it is "a

court of competent jurisdiction" as defined by 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A) and 2711. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

### Statement of Probable Cause

6.    On October 14, 2015, Rogelio Roman Mendez was sentenced by the Honorable Robert E. Jones in United States District Court for the District of Oregon criminal case number 3:15CR00049-JO to be committed to the custody of the United States Bureau of Prisons (BOP) for a term of 37 months following a conviction in two counts for 18 U.S.C. §2113(a); Bank Robbery, to be followed by a three year term of supervised release. Mendez's term of supervised release began on September 28, 2017. On February 15, 2018, the Honorable Robert E. Jones issued an arrest warrant for Mendez based on a Petition For Warrant And Order To Show Cause filed by U.S. Probation Officer Kevin McGlothen alleging violations of the terms and conditions of Mendez's supervised release. Mendez's whereabouts are currently unknown.

7.    On February 26, 2018, I identified a publicly viewable Facebook page with the screen name "Roman Mendez". I determined that the corresponding User ID Number for that account is 100018100927528. The profile picture for the account is of an adult male subject that I positively identified as fugitive Rogelio Roman Mendez based on his viewing of booking photographs taken previously of Rogelio Roman Mendez.

8.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news,

photographs, videos, and other information with other Facebook users and sometimes with the general public.

9.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.   This information may include the user's full name, birth date, gender, contact email addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

10.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.   Facebook assigns a group identification number to each group.   A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."   If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.   Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

11.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.   By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.   A Facebook user can also create "lists" of Facebook friends to facilitate the application of these

privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

12.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

13.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted as well as all photos and videos uploaded by any user that have that user tagged in them.

14.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to email messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient as well as other

information.   Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.   In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.   These chat communications are stored in the chat history for the account.   Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

15.   If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

16.   Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.   Facebook users can "like" Facebook posts or updates as well as webpages or content on third-party (i.e., non-Facebook) websites.   Facebook users can also become "fans" of particular Facebook pages.

17.   Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

18.   Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.   The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account such as "liking" a Facebook page or adding someone as a friend.   The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

19.   Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs") or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

20.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.   Gifts cost money to purchase, and a personalized message can be attached to each gift.   Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

21.     Facebook also has a Marketplace feature, which allows users to post free classified ads.   Users can post items for sale, housing, jobs, and other items on the Marketplace.

22.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform.   When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

23.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.   The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

24.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.   These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the

action, and the user ID and IP address associated with the action.   For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

25.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).   In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.   Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services as well as records of any actions taken by the provider or user as a result of the communications.

26.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.

**Page 9 – Affidavit of Patrick McGarrah**                     **USAO Version Rev. July 2015**

Further, Facebook account activity can show how and when the account was accessed or used.
For example, as described herein, Facebook logs the IP addresses from which users access their
accounts along with the time and date.   Such information allows investigators to understand the
geographic and chronological context of Facebook access, use, and events relating to the crime
under investigation.   Additionally, Facebook builds geo-location into some of its services.
Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to
locate each other.   This geographic and timeline information may tend to either inculpate or
exculpate the Facebook account owner.   Facebook account activity may provide relevant insight
into the Facebook account owner's state of mind as it relates to the offense under investigation.
For example, information on the Facebook account may indicate the owner's motive and intent
to commit a crime (e.g., information indicating a plan to commit a crime) or consciousness of
guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

      27.     Therefore, the computers of Facebook are likely to contain all the material
described above, including stored electronic communications and information concerning
subscribers and their use of Facebook, such as account access information, transaction
information, and other account information.

      28.     *Nature of examination.*  During its review of the information received from
Facebook under this warrant, law enforcement will segregate the information into two groups:
(i) information that is responsive to the warrant and that the government may therefore seize; and
(ii) information that is not responsive to the warrant.   This review will be performed within a
reasonable amount of time not to exceed 180 days from the date of execution of the warrant.   If

the government needs additional time to conduct this review, it may seek an extension of the time period from the Court.

29.     Information that is responsive to the warrant will be copied onto a separate storage device or medium.   Responsive information may be used by law enforcement in the same manner as any other seized evidence.   Information that is not responsive to the warrant will be sealed and stored on a secure medium or in a secure location.   Nonresponsive information will not be reviewed again without further order of the Court (e.g., subsequent search warrant or order to unseal by the district court).

30.     The government will retain a complete copy of the information received from Facebook for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

### Conclusion

31.     Based on the foregoing, I have probable cause to believe, and I do believe, that Rogelio Roman Mendez committed Violations of Supervised Release in violation of title 18 U.S.C. § 3653, and that evidence of that/those offense(s), as more fully described in Attachment B hereto, are presently contained in the Facebook account 100018100927528, which is more fully described above and in Attachment A hereto.   I therefore request that the Court issue a warrant authorizing a search of the Facebook account 100018100927528 described in Attachment A for the items listed in Attachment B and the examination and seizure of any such

**Page 11 – Affidavit of Patrick McGarrah**                    **USAO Version Rev. July 2015**

items found.  Because the warrant will be served on Facebook who will then compile the

requested records at a time convenient to it, there exists reasonable cause to permit the execution

of the requested warrant at any time in the day or night.

32.     Prior to being submitted to the Court, this affidavit, the accompanying

application, and the requested search warrant were all reviewed by Assistant United States

Attorney (AUSA) John Brassell, and AUSA Brassell advised me that in his opinion the affidavit

and application are legally and factually sufficient to establish probable cause to support the

issuance of the requested warrant.

### Request for Precluding Notice

33.     It is respectfully requested, pursuant to 18 U.S.C. § 2705(b), that Facebook be

ordered not to disclose the existence or service of the search and seizure warrant to the

subscriber, customer, or any other person, for a period of one year from the date of said order

(unless that period is extended by further order of the Court), except as required to disclose to

Facebook's officers, employees, or agents to the extent necessary to comply with the warrant.

Based upon my knowledge, training, and experience, it is my belief that notification at this time

of the existence of the warrant will result in flight from prosecution, and/or otherwise seriously

jeopardize an investigation.

### Request for Sealing

34.     I further request that the Court issue an order sealing, until further order of the

Court, all papers submitted in support of the requested search warrant, including the application,

this affidavit, the attachments, and the requested search warrant.   I believe that sealing these

documents is necessary because the information to be seized is relevant to an ongoing

investigation, and any disclosure of the information at this time may cause flight from

prosecution, or otherwise seriously jeopardize an investigation.    Premature disclosure of the

contents of the application, this affidavit, the attachments, and the requested search warrant may

adversely affect the integrity of the investigation.

PATRICK MCGARRAH
Deputy US Marshal, US Marshals Service

Subscribed and sworn to before me this _01st_ day of March 2018.

JOHN V. ACOSTA
United States Magistrate Judge

**Page 13 – Affidavit of Patrick McGarrah**                                    **USAO Version Rev. July 2015**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Facebook user ID 100018100927528

that is stored at premises owned, maintained, controlled, or operated by Facebook, a company

headquartered in Menlo Park, California.

**Attachment A**

## ATTACHMENT B

### Particular Things to Be Seized

**I.     Information to Be Disclosed by Facebook**

1.     To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that has been deleted but is still available to Facebook or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

   a.     All contact and personal identifying information, including for user ID: 100018100927528, full name, user identification number, birth date, gender, contact email addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

   b.     All activity logs for the account and all other documents showing the user's posts and other Facebook activities.

   c.     All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them.

   d.     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

**Page 1 – Attachment B**

e.      All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests.

f.      All "check ins" and other location information.

g.      All IP logs, including all records of the IP addresses that logged into the account.

h.      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked."

i.      All information about the Facebook pages that the account is or was a "fan" of.

j.      All past and present lists of friends created by the account.

k.      All records of Facebook searches performed by the account.

l.      All information about the user's access and use of Facebook Marketplace;

m.      The types of service utilized by the user.

n.      The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number).

o.      All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account.

p.      All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**Page 2 – Attachment B**

## II.    Information to Be Seized by the Government

2.    All information described above in Section I that constitutes evidence of Rogelio Roman Mendez, a fugitive from justice, who is the subject of an outstanding arrest warrant issued in District of Oregon Case No. 3:15CR00049-001-JO for Supervised Release Violations (18 U.S.C. § 3653) for the underlying crime of 18 U.S.C. § 2113(a); Bank Robbery. for the time period of the establishment of the account to the date of the execution of the search warrant, for each account listed in Attachment A pertaining to the following matters:

a.    Fugitive from justice.

b.    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner.

c.    Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

d.    Evidence indicating the Facebook account owner's or user's state of mind as it relates to the crime under investigation.

e.    The identity of the person(s) who communicated with the user ID about matters relating to aiding and abetting, harboring, and concealing identity, including records that help reveal their whereabouts.

## III.    Search Procedure

3.    The warrant will be executed under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A), and will require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of this attachment.

**Page 3 – Attachment B**

4.      During its review of the information received from Facebook under this warrant, law enforcement will segregate the information into two groups: (i) information that is responsive to the warrant and that the government may therefore seize; and (ii) information that is not responsive to the warrant. This review will be performed within a reasonable amount of time not to exceed 180 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court.

5.      Information that is responsive to the warrant will be copied onto a separate storage device or medium. Responsive information may be used by law enforcement in the same manner as any other seized evidence. Information that is not responsive to the warrant will be sealed and stored on a secure medium or in a secure location. Nonresponsive information will not be reviewed again without further order of the Court (e.g., subsequent search warrant or order to unseal by the district court).

6.      The government will retain a complete copy of the information received from Facebook for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Page 4 – Attachment B**